UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| LIGHTHOUSE MASONRY, INC., <br>     Plaintiff, <br><br> v. <br><br> VISION CONSTRUCTION MANAGEMENT, INC.; 100 NORTH MAIN, LLC; 110 NORTH MAIN MANAGEMENT, LLC; ROBERT L. SHAFFER a/k/a RICK SHAFFER; 100 N MAIN OWNER, LLC; ABC CORPS 1-10; JOHN DOE 1-10; and JANE DOE 1-10, <br>     Defendants. | C.A. No. 24-cv-339-JJM-PAS |

## ORDER

Plaintiff Lighthouse Masonry, LLC performed over $1.5 million dollars of masonry work at properties on Canal Street and North Main Street in Providence, Rhode Island ("Properties") pursuant to a subcontract between it and Defendant Vision Construction Management, LLC. Vision paid some, but not all of that money. Understanding that it owed this balance, Vision executed a promissory note ("Note") for $1,011,026; Defendant Robert Shaffer signed the note as Vision's President.

Pursuant to the Note, Lighthouse agreed to not make a demand for payment until 30 days after the sale of the Canal Street property. Over the course of three years, Defendants 110 North Main Management, LLC ("110 North Main Management"), 110 North Main, LLC ("110 North Main"), and Mr. Shaffer, on their

own and through their common attorneys at DarrowEverett,[1] represented to Lighthouse that it would be paid the balance on the Note when one or more of the Properties were sold. Defendants sold the Properties to 110 N Main Owner for $57 million. Lighthouse demanded payment due under the Note for $1,644,897.75. Vision did not make this payment and is in default under the Note.

Lighthouse filed this suit against 110 North Main Management, 110 North Main, 110 N Main Owner, and Mr. Shaffer for breach of contract (Count I), unjust enrichment (Count II), and for a violation of the Rhode Island Uniform Voidable Transactions Act (Count III). Because it concludes that Defendants are insolvent and have absconded from Rhode Island, Lighthouse moves for a writ of prejudgment attachment. ECF No. 3.

The "central question on the motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount." *U.S. Fid. & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45, 52 (1st Cir. 2009) (quotation marks omitted). "This attachment relief is available only upon a finding of reasonable likelihood of success." *Sakab Saudi Holding Co. v. Aljabri*, 58 F.4th 585, 604 (1st Cir. 2023). Lighthouse must therefore "demonstrate (1) a reasonable

---

[1] DarrowEverett sued 110 North Main, 110 North Main Management, and Mr. Shaffer in August 2022 for unpaid legal bills generated in connection with the Properties project. DarrowEverett moved for a temporary restraining order and prejudgment attachment on the North Main Street property in that case, arguing that that building was Defendants' only asset that could be used to satisfy any judgment and it was under contract for sale. The court granted the TRO, Defendants sold the Properties to 110 N Main Owner for $57 million, and DarrowEverett dismissed its action.

2

likelihood of success on the merits and (2) a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by defendant[s] to be available to satisfy judgment." *Safeguard Props. Mgmt., LLC v. Zoll*, No. 22-cv-11004-DJC, 2022 WL 16838781, at *1 (D. Mass. Nov. 8, 2022).

Lighthouse relies upon Fed. R. Civ. P. 64, R.I. Gen. Laws § 10-5-2 (setting forth the procedure for obtaining an attachment), and R.I. Super. Ct. R. Civ. P. 4(m)(3), in support of its request for a pre-judgment attachment. Under Rule 4(m)(3), a court can only grant Lighthouse's motion upon a "showing" that it has a probability of success on the merits and "that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs."

### Likelihood of Success on the Merits

Lighthouse has brought four claims against Defendants – one sounding in contract, one that is quasi-contract/equitable (presumably in the event the contract claim is unsuccessful), two sounding in fraud under statutory and common law. In order to grant a prejudgment attachment motion, the Court need not find that Lighthouse is likely to succeed on *all* of its claims, and in light of the complexity of the corporate structures the parties have raised implicated in its breach of contract

3

claim,[2] the Court will consider the availability of the writ of attachment first on its quasi-contract claim.

As to its unjust enrichment/quantum meruit claim, Lighthouse must prove: "(1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof." *Emond Plumbing & Heating, Inc. v. BankNewport*, 105 A.3d 85, 90 (R.I. 2014) (quotations and citations omitted). Lighthouse has alleged facts that meet each of these elements; it provided Defendants with the masonry work on the Properties, Defendants appreciated that benefit through the completion of the project and enhanced sale of the Properties, and it would be inequitable for Defendants to retain that benefit without paying for it.

---

[2] Lighthouse has alleged that Defendants breached the subcontract and Note in Count I – it argues that it will succeed on this claim against Vision based on the existence of the contract between it and Vision, Vision's breach, and Lighthouse's damages. Likelihood of success on a breach of contract claim against non-signatories 110 North Main Management, 110 North Main, and Mr. Shaffer individually is more difficult to prove but Lighthouse argues that piercing the corporate veil, relying on Rhode Island's general principles for doing so, is appropriate here. Defendants argue that the facts in this case do not permit piercing the corporate veil as the entities involved are separate. A piercing the corporate veil analysis is a factually complicated one, especially on an undeveloped record such as this one. While it seems to the Court especially as to the Properties project, that Defendant entities and Mr. Shaffer operated as one, it concludes that it need not delve into corporate structure for the purposes of this motion in light of its finding of Lighthouse's likelihood of success on its quasi-contract claim.

Defendants counter that they were not enriched because none of them received any funds following the Properties' sale.[3] As far as the Court can tell from the Complaint, that is not where the unjust enrichment lies. Lighthouse alleges, and Defendants do not seem to dispute, that it performed very expensive masonry work on two of Defendants' Properties. Defendants also do not seem to dispute, and in the face of the Note and their default on it they cannot dispute, that they did not pay Lighthouse in full for that work. Defendants retained that benefit. Therefore, the Court finds that Lighthouse is likely to succeed on the merits of at least Count II.[4]

---

[3] Lighthouse also alleges that Defendants did in fact receive funds from the Properties' sale.

[4] Though finding likelihood of success on one claim is enough for the Court to move on to considering the propriety of the attachment, the Court also notes that Lighthouse is likely to succeed on its Rhode Island Uniform Voidable Transactions Act, R.I. Gen. Laws § 6-16-1, and common law fraudulent transfer claims. Lighthouse asserts both a claim that Defendants transferred assets purposefully to avoid creditors ("insider" claim) and a claim that one or more of the Defendants paid back an insider that knew the Defendant was unable to repay other creditors ("preferential" claim). The first claim is actionable if the debtor made the transaction with the actual intent to hinder, delay, or defraud any creditor of the debtor. *See* R.I. Gen Laws § 6-16-4(a)(1). Lighthouse alleges that the transactions were to an insider; the transactions were concealed; Vision had been threatened with suit before the transactions; the transactions involved substantially all Defendants' assets; Defendants absconded; Defendants removed or concealed assets; and Defendants were insolvent or became insolvent shortly after the transactions. The "preferential" claim has three elements: (1) the debtor made a transfer to an insider for an antecedent debt (that is, a debt that existed before the transfer); (2) the debtor was insolvent at the time of the transfer; and (3) the insider had reasonable cause to believe the debtor was insolvent. *See* R.I. Gen Laws § 6-16-5(b). Defendants do not contest insolvency and admit that 110 North Main used proceeds from the Properties' sale to pay Mr. Shaffer's and 110 North Main Management's legal fees. Defendants also admit that insolvent 110 North Main used proceeds from the Properties' sale to repay capital contributed by its other 50% member, JCM Edge Brown.

### Need for Furnishing Lighthouse Security

With a likelihood of success on the merits of at least one of its claims confirmed, the Court now turns to its consideration of whether "there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs." R.I. Superior Court Rule of Civil Procedure 4(m). The Court considers whether Lighthouse's damages are readily determinable and whether it seems that Lighthouse will have difficulty enforcing a judgment.

Lighthouse has set forth an amount of damages it is entitled to based on the signed Note. Based on Defendants' conduct, breaching the subcontract, defaulting on the Note, ignoring the demand, and selling the Properties without satisfying all known creditors, the Court finds that Lighthouse is entitled to security to satisfy an eventual judgment. The Court, therefore, GRANTS Lighthouse's Motion and issues a writ of prejudgment attachment in the amount of $1,682,569.96, plus interest and costs, attaching all Defendants' real, personal, and intangible property to secure payment of the judgment. ECF No. 3.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

January 13, 2025