UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LIGHTHOUSE MASONRY, INC., <br>    Plaintiff, <br><br> v. <br><br> VISION CONSTRUCTION MANAGEMENT, INC.; 110 NORTH MAIN, LLC; 110 NORTH MAIN MANAGEMENT, LC; ROBERT L. SHAFFER a/k/a RICK SHAFFER; 110 N MAIN OWNER, LLC; JCM OPPORTUNITY FUND I, LLC; JOYAL CAPITAL MANAGEMENT, LLC; JCM FUND MANAGER, LLC; JCM INVESTMENT MANAGER, LLC; GARY F. JOYAL, ABC CORPS 1-10; JOHN DOE 1-10; JANE DOE 1-10, <br>    Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     C.A. No. 24-339-JJM-PAS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| 100 N MAIN OWNER, <br>    Third-Party Plaintiff, <br><br> v. <br><br> JCM EDGE BROWN, LLC, <br>    Third-Party Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

ORDER

Before the Court is Defendants JCM Investment Manager's ("JCM IM") and JCM Fund Manager, LLC's ("JCM Fund Manager") (collectively "JCM Defendants") Motion for Summary Judgment on the final two claims remaining against them in Plaintiff Lighthouse Masonry, Inc.'s lawsuit; they are for a violation of the Rhode

Island Uniform Void Transfers Act ("RIUVTA") (Count IV) and common law fraud (Count V). ECF No. 107. Under the RIUVTA, a debtor can be held liable for transfers of money or other property made with the intent of avoiding paying legitimate creditors. In this case, Lighthouse argues that 110 North Main transferred $73,172 from its assets to the JCM Defendants to avoid paying legitimate debts it owed to Lighthouse. Because the Court finds that both claims fail as a matter of law, the JCM Defendants' motion is granted. *Id.*

## I.    BACKGROUND

Plaintiff Lighthouse Masonry, LLC performed over $1.5 million dollars of masonry work at properties on Canal Street and North Main Street in Providence, Rhode Island ("Properties") pursuant to a subcontract between it and Vision Construction Management, LLC. Vision paid some, but not all that money back. Understanding that it owed this balance, Robert Shaffer, as President of Vision, executed a Promissory Note ("Note") to Lighthouse for $1,011,026. The record is clear and undisputed that the JCM Defendants did not owe Lighthouse any money on the subcontract or the Note. In an effort to recover, Lighthouse attempts to tag them through their relationship with 110 North Main, who it is undisputed received the net proceeds from the sale of the Property.

Defendants sold the Properties for $57 million. After payoffs, roughly $7.9 million in net seller proceeds remained. Those proceeds were then paid out according to an August 26, 2022 Side Letter Agreement executed by, among others, JCM IM and JCM Edge Brown, listing all creditors of the debtor company, 110 North Main,

2

in the order they should be paid.[1]  Lighthouse was not listed as a creditor in the Side Letter.  Attached to the Side Letter was an A/P Aging Summary[2] listing 110 North Main's creditors and amounts owed; Lighthouse was also not listed as a creditor in that summary.  Two years after the Property's sale, Lighthouse demanded payment from Vision due under the Note.  Vision did not make this payment and is in default.

Against JCM IM, Lighthouse alleges that 110 North Main fraudulently transferred $73,172 out of the $57 million sale with the intent to avoid paying its debt to Lighthouse.  There is no documentary evidence in the summary judgment record that 110 North Main transferred this money.  JCM IM's 30(b)(6) witness testified that this money was paid out after monies subject to the Side Letter Agreement were disbursed, was paid not from 110 North Main but "at the JCM Edge Brown level," "due to/due from between affiliated entities," and were reimbursements for property-related costs that JCM IM expended for legal fees and other project related costs.

---

[1] Lighthouse alleges that "[w]ith the side letter agreement, JCM Investment Manager, JCM Edge Brown, 110 North Main Management and Vision agreed that the net sales proceeds would be distributed as follows: (1) first, to the payment of all current debts and liabilities of 110 North Main, including (a) to pay off legal fees owed by Shaffer, 110 North Main and 110 North Main Management, including the legal fees owed to DarrowEverett that were the basis of the DarrowEverett Action and the TRO, (b) to the repayment of certain loans made by 110 North Main's members (including those made by JCM Investment Manager or its affiliates), and (c) to the payment of certain accrued Management Fees to JCM Investment Manager and 110 North Main Management in the amount of $4,500.00 per month; (2) second, to 110 North Main Management in the amount of $246,000 as reimbursement for amounts lent to 110 North Main; and (3) third, the remaining proceeds paid to JCM Edge Brown."  ECF No. 29 ¶ 49.

[2] An A/P Aging Summary is an accounting document that summarizes the bills and invoices a business owes, broken down by creditor and due date.

As for JCM Fund Manager, Lighthouse asserts that Section 6.1 of JCM IM's Operating Agreement required it to transfer the $73,172 to JCM Fund Manager. Section 6.1 states that "net cash flow from operations and other cash available for distribution in excess of working capital requirements (including reserves), if any, shall be distributed to the Member quarterly, or, at the election of the Manager, more frequently." JCM Fund Manager is JCM IM's sole member but there is no evidence that the $73,172 was in excess of working capital such that the language of the Operating Agreement would require a transfer to it as a member. There is no documentary evidence in the summary judgment record that 110 North Main or JCM IM transferred this money to JCM Fund Manager. And the JCM Defendants' 30(b)(6) witness testified that JCM Fund Manager did not receive any money from this transaction.

## II.   STANDARD OF REVIEW

"To prevail on summary judgment, the movant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law." *Boykin v. Genzyme Therapeutic Prods., LP*, 93 F.4th 56, 60 (1st Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The summary judgment ritual is standard fare: once the movant adumbrates an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of a genuine issue of material fact." *Id.* (citation modified). Importantly, "to carry this burden, the nonmovant cannot simply rely on evidence that is conjectural or problematic but, rather, must present definite, competent evidence." *Id.* (citation modified).

4

## III.   DISCUSSION

The JCM Defendants move for summary judgment, arguing first that the RIUVTA does not apply because a creditor/debtor relationship is required and 110 North Main is not Lighthouse's debtor and Lighthouse is not 110 North Main's creditor.  They argue that Lighthouse's claim is based on its subcontract and Note with Vision and not traceable to 110 North Main or the JCM Defendants.  The JCM Defendants also argue that there is no evidence – let alone disputed evidence – that 110 North Main ever transferred money to JCM IM or that JCM Fund Manager received any money from the sale proceeds.  Finally, they argue that the common law fraudulent transfer claim is based on the same evidence (or a lack thereof) as the RIUVTA claim so also should be dismissed on summary judgment.

Lighthouse argues against dismissal, identifying issues regarding 110 North Main's creditor status; whether 110 North Main transferred the money to JCM IM; whether the JCM Defendants took the transfer in good faith and for reasonably equivalent value; whether JCM IM was an insider under the RIUVTA; and whether JCM Fund Manager received a transfer.

### A.   RIUVTA – Count IV

"The RIUFTA[3] requires that a debtor/creditor[4] relationship exist (or have existed) at the time of the alleged transfer."  *Rohm & Haas Co. v. Capuano*, 301 F.

---

[3] The RIUVTA replaced the RIUFTA, with the former expanding the conduct involved to voidable transactions and the latter focused on only fraudulent transactions.  The general premise of the two versions is essentially the same.

[4] The Act defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

Supp. 2d 156, 160 (D.R.I. 2004) (citing *Kondracky v. Crystal Restoration, Inc.*, 791 A.2d 482, 484 (R.I. 2002)). Under the RIUVTA, a "creditor" is defined as "a person who has a claim," R.I. Gen. Laws § 6–16–1(4), and a "debtor" is defined as one "who is liable on a claim." R.I. Gen. Laws § 6–16–1(6). The JCM Defendants argue that because Vision, not 110 North Main, owed Lighthouse money on the subcontract and Note, Vision is the debtor and Lighthouse is the creditor. Therefore, it argues that Lighthouse and 110 North Main do not have the required creditor/debtor relationship.

Lighthouse argues that the RIUVTA does not require contractual privity between a creditor and debtor. It also argues that it had a right to make a claim against 110 North Main after the sale of the Properties, making 110 North Main its creditor. The Court agrees that the RIUVTA defines these terms broadly and, for the purpose of this motion, will operate under the premise that the creditor/debtor relationship requirement has been met. Now the Court moves to the two claims.

### 1. Transfer

The RIUVTA makes a transfer voidable if it was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." R.I. Gen. Laws § 6–16–4(a)(1). The Act defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other

---

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." R.I. Gen. Laws § 6–16–1(3).

encumbrance." R.I. Gen. Laws § 6–16–1(16). A creditor seeking to void a debtor's fraudulent transfer carries "the burden of proving the elements of the claim for relief by a preponderance of the evidence." *Id.* § 6-16-4(c).

The JCM Defendants move for summary judgment, arguing that not only is there no *disputed* evidence, but there is also *no* evidence that 110 North Main transferred $73,172 to the JCM Defendants fraudulently or at all. Lighthouse points to the Side Letter as evidence that 110 North Main transferred money to JCM IM in the "first tier bucket" because that payment "would fit" there. *See* ECF No. 112 at 15. But the plain language of the Side Letter states that the "first-tier bucket" only relates to the payment of debts owed by the Company, which is defined as 110 North Main and there is no evidence that $73,172 was paid to cover a liability 110 North Main incurred. And the JCM Defendants' 30(b)(6) witness testified that the payment did not come from 110 North Main but was paid "at the JCM Edge Brown level," "due to/due from between affiliated entities," and was in reimbursement for "certain property-related costs [that were] were probably legal fees and things like that. And it was simply to be reimbursed for money that it expended." *See* ECF No. 109 ¶¶ 16, 18. The fact that the $73,172 is not listed on the "A/P Aging Summary"[5] attached to the Side Letter supports that. That witness also testified that the $73,172 payment was not addressed in the Side Letter but occurred after monies subject to the Side Letter Agreement were disbursed. *Id.* ¶ 17.

---

[5] An Accounts Payable Aging Report is an accounting document that summarizes a business owner's bills and invoices owed, broken down by vendor and due date.

The same logic applies to JCM Fund Manager.  Lighthouse asserts that funds "would have been distributed" to JCM Fund Manager based solely upon language in Section 6.1 of JCM Investment Manager's Operating Agreement.  But, under that section, only cash "in excess of working capital requirements (including reserves)" is to be distributed to JCM Fund Manager, and there is no evidence in the record about JCM IM's working capital or reserves, or that that the $73,172 was "in excess" of its working capital.  This lack of evidence, along with the JCM Defendants' 30(b)(6) witness's testimony that JCM Fund Manager did not receive any transfer, is fatal to Lighthouse's RIUVTA claim against JCM Fund Manager.

Lighthouse argues that JCM IM knew or should have known through its relationship with 110 North Main that 110 North Main transferred $73,172 to JCM IM to defraud legitimate creditors.  Lighthouse repeatedly points out that summary judgment is not appropriate because the JCM Defendants did not provide more detail about the expenses the $73,172 payment reimbursed such as "what those expenses were, when they were incurred, to whom they were paid, whether they were obligations of 110 North Main as opposed to affiliates, or whether the reimbursement matched expenses actually incurred for the debtor's benefit." *See* ECF No. 112 at 19-20.  The JCM Defendants counter that Lighthouse should have further developed the record in discovery by moving to compel records about who made the $73,172 payment and further probing their corporate representative deposition designee.

The Court agrees with the JCM Defendants.  As a creditor seeking to void a fraudulent transfer, Lighthouse has the burden of proving its claim "by a

8

preponderance of the evidence." R.I. Gen. Laws § 6-16-4(c). "Thus, to defeat summary judgment on this issue, [Lighthouse] had to do more than point to a dearth of evidence. [It] had to adduce definite, competent evidence" of the fraud. *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 30 (1st Cir. 2014). Lighthouse's questions about evidence (or the lack thereof) in the summary judgment record do not evince material disputes, but shine light on a failure of proof where they have the burden.

Whether 110 North Main, to avoid paying its creditors or for any other reason, transferred $73,172 to the JCM Defendants is a threshold issue here. The subcontract and Note, entered into with Vision alone, the Side Letter Agreement that sets forth the three tranches of post-sale payments to 110 North Main's creditors that does not list Lighthouse as a creditor, and the A/P Aging Summary attached to the Side Letter Agreement that does not list the debt Vision owed to Lighthouse are undisputed. Lighthouse speculates that the JCM Defendants knew or should have known about Vision's debt to Lighthouse through its relationship with 110 North Main and Mr. Shaffer and should have realized that the transfer of $73,172 was done with the intent to defraud Lighthouse as a creditor, but speculation at this stage is not enough to raise a factual dispute.

### 2. Intent

Even if the convoluted corporate structures permeating this case could lead the Court to conclude that these LLCs and their managers knew that Lighthouse had not been paid for its work on the project, there is still no disputed evidence in the record that the transfer to JCM IM was made "[w]ith actual intent to hinder, delay, or

9

defraud any creditor of the debtor." R.I. Gen. Laws § 6–16–4(a). Courts consider multiple statutory factors when determining whether a debtor had the requisite intent under RIUVTA. *Id.* § 6-16-4(b). Those factors are whether:

(1) The transfer or obligation was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

R.I. Gen. Laws § 6-16-4(b).

Lighthouse focuses on a few of these factors to argue actual intent to defraud. Considering each of these factors in light of the evidence, the Court finds that Lighthouse has not met its burden of proving actual intent under § 6–16–4(a). Lighthouse argues extensively that JCM IM is an insider[6] because it was a managing agent and one of only two managing members of 110 North Main. Due to this

---

[6] Lighthouse argues that the JCM Defendants are insiders under § 5(b), which provides an additional ground for finding that the transfer to them is voidable. Lighthouse mentioned "insider" status a few times in its Second Amended Complaint but did not specifically rely on that section of the RIUVTA. There is no indication whether being an insider under § 4(a) or § 5(b) makes a difference in the Court's consideration of actual intent.

relationship, Lighthouse asserts that JCM IM knew or should have known the details of the sale transaction and of 110 North Main's insolvency and intent to defraud its creditors.[7] As an example, Lighthouse notes that JCM IM was a signatory to the Side Letter Agreement, but that letter does not reference Lighthouse or note that Lighthouse had a claim against Vision so does not establish that JCM IM had knowledge of Lighthouse's claims. And Lighthouse did not demand payment from Vision on the Note until two years after the sale of the Properties, so it is not clear that knowledge of Vision's debt to Lighthouse was prevalent at the time of the sale.

Lighthouse also argues that the transfer was not for reasonably equivalent value and the JCM Defendants did not take the money in good faith. But a reimbursement of $73,172 from an affiliated entity for property-related costs expended such as legal fees – without evidence to the contrary – appears to be reasonable and a good faith reimbursement. All in all, there is no dispute in the record that a $73,172 transfer made from a multimillion-dollar property sale after disbursements required by the Side Letter Agreement is not voidable under the RIUVTA. The Court grants summary judgment for the JCM Defendants on Count IV.

---

[7] Lighthouse argues on summary judgment that Vision's knowledge of its debt to Lighthouse is imputed to Mr. Shaffer; his knowledge is imputed to 110 North Main Management, which is then imputed to 110 North Main, and then imputed to JCM IM. The JCM Defendants counter that a finding that Mr. Shaffer's knowledge acquired while performing duties on behalf of Vision can be imputed to another company 110 North Main, and then to its member JCM IM is contrary to agency law principles. The Court agrees that this chain of actual or implied knowledge, without any evidence (disputed or undisputed), is too tenuous and speculative to overcome the JCM Defendants' motion for summary judgment.

11

### B. Common Law Fraud – Count V

The JCM Defendants move for summary judgment on Lighthouse's common law fraudulent transfer claim. They argue that this claim is essentially the same as the RIUVTA claim and so should be dismissed on the same basis. Lighthouse counters that its common law claim stands on its own and should not be dismissed.

The First Circuit "case law rejects the proposition that the adoption of the UFTA by a state preempts all common law remedies relating to fraudulent transfers." *In re Valente*, 360 F.3d 256, 261 (1st Cir. 2004). A court must consider whether a conveyance was fraudulent and therefore void under the common law. The consideration depends on whether the debtor "worked an injustice upon plaintiff by delaying, hindering or otherwise adversely affecting him in the enforcement of his right of recovery." *Oury v. Annotti*, 324 A.2d 325, 329 (1974); *see Warwick Mun. Emp. Credit Union v. Higham*, 259 A.2d 852, 855 (1969).

While the RIUVTA does not preempt common law remedies, so Lighthouse's fraudulent transfers claim stands alone, Lighthouse's arguments in the face of the JCM Defendants' motion for summary judgment on Count V are the same. Because Lighthouse identifies the same factual disputes that the Court discussed in the context of the RIUVTA claim, the outcome is the same. The Court grants the JCM Defendants' motion on Count V.

## IV.   CONCLUSION

For the aforementioned reasons, the Court GRANTS the JCM Defendants' Motion for Summary Judgment. ECF No. 107.

12

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

June 30, 2026